**CHRYSLER CORPORATION, Appellant,**

v.

**UNEMPLOYMENT INSURANCE APPEAL BOARD OF the DEPARTMENT OF LABOR and Joseph E. Connors, et al., Appellees.**

Supreme Court of Delaware.

Submitted June 18, 1975.

Decided Sept. 17, 1975.

Carl Schnee, Schnee & Castle, and Jeffrey S. Goddess, Tybout & Redfearn, Wilmington, for appellant.

Jay H. Conner, Wilmington, for Unemployment Ins. Appeal Bd., appellee.

Harvey B. Rubenstein, Wilmington, for employees, appellees.

Before HERRMANN, C. J., McNEILLY, J., and QUILLEN, Chancellor.

HERRMANN, Chief Justice:

In this unemployment compensation case, the question is whether the claimants were "participants" in a labor dispute such as to disqualify them for benefits under 19 Del. C. § 3315(4) [1] *and Lowe Bros., Inc. v. Unemployment Insurance Appeal Board,* Del. Supr., 332 A.2d 150 (1975).

I.

The Unemployment Insurance Appeal Board made the following findings of fact:

The claimants were employees of Chrysler Corporation and members of Local Union 1212 of the United Auto Workers (hereinafter "UAW"), which consisted of office workers, engineers, and parts-de-

---

[1]. 19 Del.C. § 3315 provides in pertinent part:

"§ 3315. Disqualification for benefits.

"An individual shall be disqualified for [unemployment compensation] benefits:

    \*     \*     \*     \*     \*

"(4) For any week with respect to which the Department finds that his total or partial unemployment is due to a stoppage of work which exists because of a labor dispute at the factory, establishment or other premises at which he is or was last employed;

    \*     \*     \*."

partment personnel. Local Union 1183 of the UAW, consisting of production workers at the same Chrysler plant, went on strike. The members of Local Union 1212 reported for work on the following day; but, three days later, approximately 128 members of that union,[2] the claimants here, were laid off because of lack of work resulting from the strike in which Local Union 1183 was involved. Both Locals came under the same International of UAW; but each had separate officers, by-laws, and meeting places. Each Local had a separate contract with Chrysler; there were different provisions in each contract, different salary classifications, and different contract negotiators. Although the Appeal Board made no finding, it seems undisputed that the International had just approved the Local 1183 strike.

The Appeal Board, relying upon *Emrick v. Unemployment Compensation Commission*, Del.Super., 3 Storey 561, 173 A.2d 743 (1961), made the following findings and conclusions:

"  *   *   * There is no question that these employees, members of Local 1212, did not directly or indirectly participate in the labor dispute. In fact, they crossed the picket line to go to work. We are not satisfied that they would receive any gain from the outcome of the labor dispute or as to their interest in the dispute. Accordingly, these employees are simply employees who are out of work through no fault of their own and as such are entitled to unemployment compensation benefits."

Upon appeal by Chrysler, the Superior Court upheld the Board. We affirm.

## II.

In *Lowe*, the non-striking claimants, members of the lathers' unions, were out of work because of strikes by separate unions representing various other trades at the construction sites at which the claimants were employed. Approving the conclusion and rationale of *Emrick*, we held that under a proper construction of our Statute:

"  *   *   * Claimant involvement in the causation of the unemployment is the sole focal point of § 3315(4) when read in the light of the public policy underlying the Act. If the unemployment is in any way the fault of the claimant, by reason of his participation in a labor dispute, he is disqualified for benefits; if, on the other hand, he is free of fault because of non-participation in the labor dispute [and is otherwise qualified], he is eligible for benefits." 332 A.2d at 153.

The claimants contend that *Lowe* settles the issue here. The employer contends, however, that *Lowe* is distinguishable because "both locals [the striking Local 1183 and the claimants' non-striking Local 1212] followed the directives of national headquarters";[3] that, therefore, a "partici-

---

2. There were about 6000 members in Local Union 1183 and 300 in Local Union 1212.

3. The president of Local 1212 testified as to the degree of interrelationship of Locals 1183 and 1212 at the International UAW level:
"A See, to try to clarify it, you have a local agreement plus an international agreement. At the same time both are negotiated. The international is negotiating the fringe benefits, health and accident. We are negotiating working conditions, anything like that. Anything other than money. But they continue on doing that.

"Q So, the international contract that is binding on 1212 people is the same international contract that's binding on 1183 people?
"A Not in all instances, no. We have other things which they don't have. We have a stock program, things like this that 1183 doesn't have. Here again you have a separate negotiating committee in Detroit who also negotiates our contract.
"Q The contract that the 1212 people had and the contract that the 1183 people had, on an international level would not be identical?
"A No, not necessarily.

pation-through-agency" approach is the proper line of scrutiny for examination of the claimants' "involvement" and consequent disqualification for benefits in this labor dispute, citing *Ford Motor Co. v. Abercrombie*, 207 Ga. 464, 62 S.E.2d 209 (1950), and *United States Steel Corporation v. Wood*, 269 Ala. 5, 114 So.2d 551 (1959). In *Abercrombie*, the claimants, employed in a Georgia plant of Ford, were laid off for lack of work due to a strike at a Michigan plant of the employer. The Court indicated that the officers of the International bound the Georgia claimants as their agents; and held that the two plants were part of the same overall facility and, thus, the work stoppage was within the "factory, establishment, or other premises" disqualification provision of the Georgia Unemployment Compensation Act. In *Wood*, the Court disqualified a non-striking claimant who, as here, was a member of a local union affiliated with a national union with which the striking local was also affiliated, on the ground that the national union had "masterminded" the strike. The employer's argument concludes that to reject the "participation-through-agency" rationale of *Abercrombie* would be to permit the International of UAW to "whipsaw" under our Statute; that it would

permit an award of unemployment compensation benefits where there is involved "a national strike over national issues called by the claimants' own union in the context of ongoing collective bargaining."

In response to the "participation-through-agency" concept of *Abercrombie*, the claimants cite *Ford Motor Co. v. Kentucky Unemployment Compensation Commission*, Ky.App., 243 S.W.2d 657 (1951) and *Park v. Appeal Board of Michigan Employment Security Commission*, 355 Mich. 103, 94 N.W.2d 407 (1959), and contend on the basis thereof that *Abercrombie* is unsound and, alternatively, that the Statute and the record in this case do not support the *Abercrombie*-type disqualification for benefits.

In the *Kentucky* case, the strike at Ford's Michigan plant resulted in lay-off of claimants at Ford's Kentucky plant for lack of work. The Court rejected the "participation-through-agency" rationale of *Abercrombie* and held that the Kentucky claimants were entitled to benefits since they were not directly on strike and had no power to avert the Michigan strike.[4]

In *Park,* a strike at an Ohio plant caused the claimants employed at Michigan

---

     \*     \*     \*     \*     \*

"Q When the office employees at the international level negotiate with Chrysler, do the office employees have their own negotiating committee?

"A Yes. Right.

"Q Are those negotiations separate at the international level?

"A Yes, I would say they are, to a certain extent they are. Some of the results of the negotiations are the same. The money and the way it's split up usually coincides together. It dovetails between the two.

"Q Do they meet at separate places at separate times, if you know, at the international level?

"A Well—

"Q If you know.

"A They meet at different times, I guess. The negotiating team is made up of different people, and at the end, the P&M finishes their negotiations, the office workers are still left there to negotiate their contract."

4. The Court stated in *Kentucky*:
"A copy of the Constitution of the International Union was filed as an exhibit, and

Article 49 thereof clearly leaves the power to initiate a strike with the Local Union except where the International concludes a general strike is necessary. However, before a Local Union may put its voted strike into effect it must obtain the consent of the International or suffer the loss of the financial and organizational support of that body. While the International was recognized as the exclusive collective bargaining agency by the Company with the necessary power to bind the Local Unions, it does not follow that the International Union has the power to call out the Louisville Local to support the Michigan Local in the present situation. In other words, the members of the Louisville Local granted the International Union certain powers of agency and no more. The powers of an agent must be specific or necessarily inferred; they cannot be created carte blanche. Since the Louisville Local took no action to initiate a strike and the International Union did not exercise any power it might have to call it out on strike in this situation, how can it be said that the International was the agent of the Louisville Lo-

plants to be laid off for lack of work resulting from the strike. It was undisputed that the claimants engaged in no strike activity and continued working until they were laid off. The Court refused to disqualify the claimants on the basis of the principal-agent holding in *Abercrombie*, stating:

> "[t]hat [the *Abercrombie*] court also found as a fact that there was no participation in, nor causing of, the strike by any of the claimants, but that they were bound by the actions of their international union officers in authorizing the Rouge plant strike on the theory of principal and agent. This holding would, of course, suggest that any strike in any plant of any employer in any State would disqualify for unemployment compensation benefits any employee of any other plant, whether in the same State or not, and whether owned by the same employer or not, provided he was unemployed as a result of that strike and the strike was called by the same union.

> "We find no warrant for such conclusions in the Michigan statute." 94 N. W.2d at 416.

The claimants also rely upon *Chrysler Corporation v. California Unemployment Insurance Appeals Board*, 199 Cal.App.2d 683, 18 Cal.Rptr. 843 (1962). There, at a certain Chrysler plant the UAW organized Local 230 as an "amalgamated local" (as in the instant case) consisting of three separate bargaining units: office and clerical workers; engineers; and production and maintenance workers, the bulk consist-

ing of the latter. Each unit had a separate contract with Chrysler. The production and maintenance workers took a strike vote in connection with their contract. The office and clerical workers and engineers were not entitled to and did not vote. After approval of the strike by the International Union, a strike was called, and the production and maintenance workers of Local 230 immediately left their jobs. The office and clerical workers and engineers of Local 230 did not strike and did not in any way participate in the strike or picket line. When the strike commenced, they crossed the picket line, remained at their jobs, and continued to perform all work available to them. However, the strike forced a shut down of the production line, thus ending the flow of work for the office and clerical workers and engineers. Thereafter, they were laid off at various times because there was no work for them. The employer contended that the office and clerical workers and engineers were ineligible for unemployment compensation benefits because "they left voluntarily in that their unemployment was caused by a trade dispute initiated by their own union". 18 Cal.Rptr. at 845. The California Unemployment Compensation Act provided in pertinent part: "[A]n individual is not eligible for unemployment compensation benefits, and no such benefit shall be payable to him, if he left his work because of a trade dispute. * * *" Cal.Unempl.Ins. Code Ann. § 1262. That provision had been interpreted by the California courts, in accord with the legislative intent, to mean that persons involuntarily out of work as the result of a labor dispute should not suffer loss of benefits.[5] The

---

cal as well as all other Locals when it approved or gave its consent to the Michigan strike? The Louisville Local had no power to avert the strike of the Michigan Local. On the basis of this line of reasoning we cannot agree with the decision of the Supreme Court of Georgia in the companion case of *Ford Motor Company v. Abercrombie*, 207 Ga. 464, 62 S.E.2d 209, which grew out of this same Michigan strike and where that

court concluded that the officers of the International were the authorized agents of the Hopeville, Georgia, Local when they sanctioned the Michigan Local's strike in the parts producing plant at River Rouge." 243 S.W.2d at 659.

5. The similarity of California and Delaware law on this point, both statutory and decisional, is significant.

*California* Court applied the so-called "volitional test" to determine whether there was any personal responsibility on the part of the office and clerical workers, as well as the engineers, which led to their unemployment. The Court noted that there was "a complete absence of any act or conduct on the part of the office and clerical workers and engineers in connection with, or in furtherance of, the strike"; that they crossed the picket lines and reported for work; that they remained at their jobs, and that they did not perform "any overt acts that would place them in league with the strikers." 18 Cal.Rptr. at 846. The Court then held that the claimants did not participate in any way in the strike and, reversing the lower court, affirmed the Appeal Board's finding of eligibility for benefits. *Cf. Pacific Maritime Association v. California Unemployment Insurance Appeals Board*, 236 Cal.App.2d 325, 45 Cal.Rptr. 892 (1965).

### III.

■ The rule of *Lowe* bars eligibility for benefits under § 3315(4) if the claimant was a participant, directly or indirectly, in a labor dispute. We approve the *Kentucky* and the *California* approach to the issue of participation.

■ It is conceded by the employer that the claimants did not participate directly in the labor dispute. The question raised by the employer is whether there was an indirect participation through the officers of the International as agents.

The record in this case does not support the indirect participation theory, *i. e.,* the "implied-participation-through-agency" doctrine relied upon by the employer. It appears from the reported opinions, in all of the cases relied upon here by both sides, that extensive records were made furnishing details of the International constitution and the intra-union and inter-local structures and relationships. Here, the record is almost barren (not even the International Constitution is before us) as to any inter-locking relationship among the striking local union, the non-striking local union, and the International Union. More importantly to the employer's thesis— there is no evidence in the record before us as to the implementation of any principal-agent relationship which may have existed between the officers of the International on the one hand, and these claimants on the other.

Following the reasoning of the *Kentucky* Court, we ask: Where in this record are the powers of the officers of the International as agents of Local 1212 specifically stated or necessarily inferred, as an agent's powers must be? Since there is no evidence that Local Union 1212 took any action to involve itself in the labor dispute or to initiate the strike by Local 1183, and there is no evidence that the International exercised any power it might have had to involve Local 1212 in the dispute and the strike, how can it be said that the International acted as the agent of Local 1212 when it approved a strike by Local 1183? And what power did the members of Local 1212 have, on the record before us, to avert the labor dispute and the strike in which Local 1183 became involved?

These questions demonstrate, we think, the correctness of the finding of the Appeal Board that, under the evidence before it, the claimants "did not directly or indirectly participate in the labor dispute".

It follows that this case is controlled by the "volitional test" of *Lowe*: since on the record before us the claimants were "free of fault because of non-participation in the labor dispute" (332 A.2d at 153), they are eligible for unemployment compensation benefits.

\*   \*   \*   \*   \*   \*

Affirmed.