CLETIS E. EMRICK, Appellant, v. UNEMPLOYMENT COMPENSATION COMMISSION, Appellee.

(*August* 9, 1961.)

CAREY, J., sitting.

*Joseph Donald Craven* for Appellant.

*Donald W. Booker* for Appellee.

Superior Court for New Castle County, No. 1407, Civil Action, 1959.

CAREY, J.:

The facts are not in dispute. Appellant, an engineer, was hired by American Bridge Company to work on the erection of a building. His employer was a subcontractor on that job. The employees of another subcontractor went on strike, with the result that American Bridge could do no more work until the strike was ended because its work depended upon the progress of the work being done by the other subcontractor. Appellant's supervisor called him on the telephone and told him there would be no more work until the strike was settled. His employer offered him no other work. The striking employees were members of a union entirely unconnected with appellant's union. His union was not on strike and had no dispute with American Bridge or the general contractor or any other subcontractor. The Unemployment Compensation Commission denied his application for benefits because of *Title* 19 *Del. C.* § 3315(4) which reads as follows:

"For any week with respect to which the Commission finds that his total or partial unemployment is due to a stoppage of work which exists because of a labor dispute at the factory, establishment, or other premises at which he is or was last employed;"

On this appeal, the question is whether the quoted provision disqualifies an individual from receiving benefits when neither he or his union is on strike, no labor dispute exists between him or his union and his employer or any other contractor on the job, neither he nor his union has any connection with the striking union, and his unemployment is due to lack of work resulting from the strike of the employees of another subcontractor at the location where he had been working. This question was answered in affirmative by the Commission under the literal language of Sec. 3315(4) upon its finding that his employment was due to a stoppage of work which existed because of a labor dispute at the premises where he was last employed.

Must the statute be read so literally? Situations can be imagined where a strictly literal application of this language could result in a denial of benefits even though everyone would agree that no such result was ever intended. For example, take the case of an office building occupied by several tenants. The maintenance staff of that building goes on strike in the dead of winter with the result that the building is unheated. Employees of the tenants cannot work because of the lack of heat. In a literal sense, their unemployment could be blamed upon a labor dispute at the premises where they are employed, although their plight is the same as if it were due to a breakdown of the heating system. It would certainly not be within the true spirit and meaning of the Act to hold that those office workers are not covered simply because of the difference in the reason for the lack of heat.

It seems obvious, therefore, that the Legislature did not intend its language to be applied strictly literally to all cases without reference to the facts of the particular situation and without consideration of the basic aims and objects of the Act. Determination of the applicability of Sec. 3315 (4) to a given instance must be made in the light of the public policy announced in Sec. 3301 as well as the reason for the disqualification set forth in the paragraph here considered.

The basic public policy of the statute is protection of the worker from the hazard of involuntary unemployment. This policy is implemented in part by the creation of a fund to be used "for the benefit of persons unemployed through no fault of their own". In interpreting the Act, we should not exclude from its benefits any person who is unemployed through no fault of his own, unless the Legislature itself has demonstrated an intent to do so by words fairly clearly showing such intent. This statement is consistent with the reported decisions, which invariably interpret similar acts liberally in favor of the worker. *Cf. Nordling v. Ford Motor Co.*, 231

*Minn.* 68, 42 *N. W.* 2d 576; *Dalton Brick & Tile Co. v. Huiet,* 102 *Ga. App.* 221, 115 *S. E.* 2d 748.

The exception found in Sec. 3315(4) is undoubtedly bottomed upon a legislative intent that the Unemployment Fund shall not be used to finance labor disputes. This intent is not supported by excluding from coverage persons who have not the slightest interest in the dispute, who have nothing to gain or lose from its outcome, and who have not directly or indirectly participated in it, but who are thrown out of work because of a dispute between other persons. This is appellant's position. It is difficult to believe that such a result was in fact intended, notwithstanding the failure to include in the statute express language clarifying that intent, as has been done in some other states. *Cf. Kieckhefer Container Co. v. Unemployment Compensation Commission,* 125 *N. J. L.* 52, 13 *A.* 2d 646.

In my opinion, the basic policy of the law and the true purpose of this exception fully justify acceptance of the view taken by the Alabama and Georgia Courts in *Usher v. Department of Industrial Relations,* 261 *Ala.* 509, 75 *So.* 2d 165, and *Dalton Brick & Tile Co. v. Huiet, supra.* They hold that unemployment must be the *direct* or *proximate* result of the labor dispute. True, the Alabama Act contains the word "direct", but the Georgia Court reached the same conclusion upon language like ours. Applying that meaning to the imaginary case of the office workers given above, we see that the direct or proximate cause of their unemployment is the lack of heat in the buildings; the labor dispute is the indirect cause. In the appellant's case, the true or proximate cause was lack of work; the dispute was the indirect cause. His predicament was the same as if the lack of work had been created by bad weather or lack of materials, for which he should not be penalized.

For the reasons given, I am of the opinion that the undisputed facts do not warrant the conclusion that appellant's

unemployment was due to a stoppage of work existing because of a labor dispute, within the meaning of the Act. On the contrary, he was unemployed through no fault of his own. The decision of the Commission must accordingly be reversed and the record remanded.