E. I. DuPONT DE NEMOURS & COMPANY, Respondent Below, Appellant,

and

Employment Security Commission of the State of Delaware, Respondent Below,

v.

Thomas C. DALE, Petitioner Below, Appellee.

Supreme Court of Delaware.

Oct. 22, 1970.

Edward W. Schall and W. Breckinridge DeRiemer, Wilmington, for appellant.

Harvey B. Rubenstein, Wilmington, for appellee.

WOLCOTT, C. J., and CAREY and HERRMANN, JJ., sitting.

WOLCOTT, Chief Justice:

This is an appeal by the DuPont Company from a judgment of the Superior Court reversing a ruling by the Employment Security Commission that because of the existence of a labor dispute, Thomas C. Dale, appellee herein, who had gone on strike, was disqualified from unemployment compensation benefits.

Dale was a member of the Carpenters' Union which went on strike against the DuPont Company in May, 1969. He joined the other members of his union in going out on strike. At the time, Dale had been employed by DuPont Company for approximately three years and intended to return to DuPont Company's employ at the termination of the strike. Actually, the strike ended in June, 1969 and Dale returned to work at DuPont Company as a carpenter.

During the period in which Dale was out on strike, he worked for Eastern Gunite Co. for one and one-half weeks and was then laid off for lack of employment. He applied for unemployment benefits. The Commission ruled adversely to him, holding that he was disqualified because his unemployment was due to the existence of a labor dispute at the place of his last employment. The Superior Court reversed.

The public policy underlying the Unemployment Compensation Law of Delaware is expressed in 19 Del.C. § 3301. Specifically, it is that the interpretation and application of the Unemployment Compensation Law shall be to eliminate economic insecurity due to involuntary unemployment. The Act is stated to have been enacted "for the benefit of persons unemployed through no fault of their own."

In 19 Del.C. § 3315(4), one of the disqualifications for unemployment compensation benefits due to unemployment is set forth as follows:

"For any week with respect to which the Commission finds that his total or partial unemployment is due to a stoppage of work which exists because of a labor dispute at the factory, establishment, or other premises at which he is or was last employed."

The Employment Security Commission held that the DuPont Company was the last regular employer of Dale. It further held that Dale's interim employment at Gunite was of a temporary nature and was not *bona fide* employment. Accordingly, it ruled that he was disqualified from receiving unemployment compensation benefits because his unemployment was due to a

labor dispute at the place of his last employment.

There is no doubt but that the underlying policy of the Unemployment Compensation Law is to remove the economic disabilities resulting from involuntary unemployment. *Johnston v. Chrysler Corporation*, 4 Storey 279, 178 A.2d 459 (Del.1962); *Jewell v. Unemployment Compensation Commission*, 5 Storey 16, 183 A.2d 585 (Del.1962). In *Emrick v. Unemployment Compensation Commission*, 3 Storey 561, 173 A.2d 743 (Del.1961), it was held that since the basic public policy of the statute is protection from the hazard of involuntary unemployment, no person, by interpretation of the Act, should be excluded from its benefits unless the Act, itself, in so many words, has demonstrated fairly an intent to make such exclusion. One such exception was found in § 3315(4) which is stated to have been bottomed upon a legislative intent that the unemployment fund "shall not be used to finance labor disputes".

We note that § 3315(4) provides an exclusion from benefits because of a labor dispute at the establishment "at which he is or was last employed". We think the public policy underlying the Unemployment Compensation Act, as a whole, creates an ambiguity in § 3315(4) in the meaning of the phrase "last employed". Claimant argues that the phrase should be applied literally to his employment with Gunite from which he was laid of for lack of employment, and not by reason of a labor dispute. However, we think that to do so as requested would be to permit the unemployment fund to be "used to finance labor disputes". We must not permit this to be done in the guise of construing the statute.

The Employment Security Commission held that the employment of Dale by Gunite was a mere temporary or stop-gap employment, and that he intended to return to his permanent employment with DuPont Company at the termination of the strike. We think this finding makes necessary an affirmance of the Commission's ruling that he was not entitled to unemployment benefits by reason of a layoff. The reason is, of course, that his unemployment was due to his own action in going out on strike due to a labor dispute with his permanent employer.

Our conclusion in this respect finds support in authorities from many other jurisdictions. For example, see *Mark Hopkins, Inc. v. California Employment Commission*, 24 Cal.2d 744, 151 P.2d 229 (1944); *Gentile v. Director of Division of Employment Security*, 329 Mass. 500, 109 N.E.2d 140 (1952); *Westinghouse Electric Corp. v. Board of Review*, 25 N.J. 221, 135 A.2d 489 (1957); and *Huck v. Industrial Commission*, 361 S.W.2d 332 (Mo.App.1962).

All of the cited cases, in construing exclusions similar to § 3315(4) of the Delaware Act, construed the phrase "last employed" to mean last permanently or regularly employed. We do the same, for we think only by such construction can the ambiguity created by the underlying policy of the Act be resolved in a way to further the policy of the Act.

The Superior Court reversed the Commission on the authority of *Great Lakes Steel Corporation v. Michigan Employment Security Commission*, 6 Mich.App. 656, 150 N.W.2d 547, aff'd 381 Mich. 249, 161 N.W.2d 14 (1968). The Michigan case is, of course, authority in support of the ruling by the Superior Court, but we think it is decidedly the minority view throughout the country. We prefer the majority view construing the exclusion from benefits contained in § 3315(4) in the manner in which we have. Otherwise, the exclusion, which is an expression of deliberate legislative intent, would be emasculated and, under certain circumstances the underlying policy of the Act would be defeated. We accordingly reject the minority view represented by the Michigan case.

Although no invariable distinction between *bona fide* and temporary interim em-

ployment can be made, a survey of decisions concerning this matter suggests some guidelines. There must be an unequivocal termination of the prior employment, including the severance of seniority and other accumulated benefits. The succeeding employment must be assumed with the intention to remain as permanently as the job allows. Whether or not the type of work involved in the succeeding employment and the remuneration therefrom approximates that of the prior employment is also persuasive. Under these guidelines, there would be no discrimination against construction tradesmen whose work, by necessity, is temporary.

For the foregoing reasons, the judgment below is reversed and the case is remanded with instructions to enter a judgment affirming the ruling of the Employment Security Commission.