LOWE BROS., INC., Employer, Appellant,

v.

UNEMPLOYMENT INSURANCE APPEAL BOARD et al., Employees, Appellees.

Supreme Court of Delaware.

Argued Nov. 18, 1974.

Decided Jan. 14, 1975.

issue and so the evidence warranted submission of the assault issue.

H. James Conaway, Jr., and Doris M. Toll, of Young, Conaway, Stargatt & Taylor, Wilmington, for employer, appellant.

Harvey B. Rubenstein, Wilmington, for employees, appellees.

Jay H. Conner, Wilmington, for Unemployment Insurance Appeal Board, appellee.

Before HERRMANN, C. J., and DUFFY and McNEILLY, JJ.

HERRMANN, Chief Justice:

In this unemployment compensation case, we are called upon to consider the meaning and scope of 19 Del.C. § 3315(4).[1]

The Superior Court, following Emrick v. Unemployment Compensation Commission, Del.Super., 3 Storey 561, 173 A.2d 743 (1961), affirmed the decision of the Unemployment Insurance Appeal Board that the § 3315(4) benefit-disqualification provision does not apply to the employees in this case. See 316 A.2d 568. The employer appeals, primarily on the ground that *Emrick* should be overruled.

## I.

The claimants were employees of Lowe Bros., Inc. (hereinafter "Lowe"), a construction subcontractor. They were members or permittees of the lathers union working on three separate construction sites. During the course of the work, oth-

---

1. 19 Del.C. § 3315 provides in pertinent part:
"§ 3315. Disqualification for benefits.
"An individual shall be disqualified for [unemployment compensation] benefits—
\*     \*     \*     \*     \*
"(4) For any week with respect to which the Commission finds that his total or partial unemployment is due to a stoppage of work which exists because of a labor dispute at the factory, establishment, or other premises at which he is or was last employed; \*  \*  \*."

er union trades went on strike at each site. The striking trades included the operating engineers, carpenters, laborers, cement finishers, plasterers, painters, and tilesetter helpers.

The claimants were not members of any of the striking unions, and were not on strike against Lowe, or the general contractor, or any other subcontractor. None of the striking unions was the bargaining agent for the claimants.

The claimants were ready, willing, and able to work. They were laid off by Lowe for lack of work because their work as lathers was dependent upon the progress of work by members of the unions on strike.

## II.

■ The ultimate question is whether we agree with *Emrick*, decided by the Superior Court 13 years ago and frequently followed since, although not heretofore reviewed directly by this Court. E. g., Harper v. Unemployment Insurance Appeal Board, Del.Super., 293 A.2d 813 (1972); Haskon Inc. v. Coleman, Del.Super., 310 A.2d 657 (1973).

The factual situation in *Emrick* was like the instant case: The claimant was an employee of a subcontractor who was thrown out of work as the result of a strike by the employees of another subcontractor. The striking employees were members of a union, unrelated to the claimant's union which was not on strike and had no dispute with the subcontractor, or the general contractor, or any other subcontractor. In deciding the applicability of § 3315(4), Judge Carey recognized that the basic public policy of the Delaware Unemployment Compensation Act is "protection of the worker from the hazard of involuntary unemployment"; that policy being implemented by the creation of a fund to benefit "persons unemployed through no fault of their own", and not "to finance labor disputes."[2] (173 A.2d 745). Pursuing that public policy, Judge Carey concluded that the claimant in *Emrick* was not disqualified from receiving unemployment benefits under § 3315(4) because, basically, he was unemployed through no fault of his own.

We agree with the conclusion and that basic rationale of *Emrick*.

## III.

■ In view of the express § 3301 "no-fault" public policy underlying our Unemployment Compensation Act, we find ambiguity in the "labor dispute" phrase of § 3315(4).[3] Does it mean any labor dispute

---

2. 19 Del.C. § 3301 provides in part:

"§ 3301. Declaration of public policy.

"As a guide to the interpretation and application of this chapter, the public policy of this State is declared to be as follows: Economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of this State. Involuntary unemployment is therefore a subject of general interest and concern which requires appropriate action by the Legislature to prevent its spread and to lighten its burden which now so often falls with crushing force upon the unemployed worker and his family. * * *. The Legislature, therefore, declares that in its considered judgment the public good, and the general welfare of the citizens of this State require the enactment of this measure, under the police power of the State, for the compulsory setting aside of an unemployment reserve to be used for the benefit of persons unemployed through no fault of their own."

3. This Court has previously found ambiguity in other § 3315(4) phraseology by reason of the express public policy underlying the Act. In E. I. duPont deNemours & Company v. Dale, Del.Supr., 271 A.2d 35 (1970), this Court recognized that "the underlying policy of the Unemployment Compensation Law is to remove the economic disabilities resulting from involuntary unemployment". *Emrick* was there acknowledged as standing for this proposition: "[S]ince the basic public policy of the statute is protection from the hazard of involuntary unemployment, no person, by interpretation of the Act, should be excluded from its benefits unless the Act, itself, in so many words, has demonstrated fairly an intent to make such exclusion." In *Dale*, this Court also recognized the underlying public policy that the unemployment fund "shall not be

or only one in which the claimant was involved?

Lowe contends that § 3315(4) is clear and unambiguous and leaves no room for statutory construction; that it must be read literally so as to bar compensation for any and all unemployment arising from a labor dispute, whether or not an unemployed claimant participated or was involved therein, and whether or not the unemployment was involuntary and without fault on the part of the claimant.

We find such literal reading of § 3315(4) unacceptable as being in conflict with the underlying public policy of the Act. The conflict creates ambiguity which must be resolved by a construction of § 3315(4) in favor of the clearly expressed public policy set forth in § 3301. E. I. duPont deNemours & Company v. Dale, Del.Supr., 271 A.2d 35 (1970). We find in the Act no clear and unequivocal expression of intent to exclude from its protection employees who are, like the claimants, involuntarily unemployed through no fault of their own by reason of a work stoppage arising from a labor dispute in which they are in no way involved. In the absence of a clear and unequivocal expression of such intent, no such exclusion may be found in § 3315(4).

Accordingly, pursuant to the expressed public policy of the Act, we construe the disqualifying phrase "labor dispute" in § 3315(4) to mean "labor dispute in which he [the claimant] is a participant." [4]

There is no showing on the record before us that the claimants participated in the labor dispute.

## IV.

█ Pursuant to the "direct interest in the labor dispute" language of *Emrick*, Lowe contended alternatively that the claimants had a direct interest in the outcome of the labor dispute because of the historical wage-scale interrelationship between non-striking crafts and striking crafts; that, therefore, under *Emrick*, the claimants were disqualified under § 3315(4).

█ We do not agree that a direct interest in the outcome of a labor dispute constitutes a disqualification for benefits under § 3315(4). That ground of disqualification nowhere appears in our Statute, as it does in the statutes of some states. E. g., Annese v. Board of Review of Department of Employment Security, 105 R.I. 32, 249 A.2d 46 (1969); Lanyon v. Administrator, etc., 139 Conn. 20, 89 A.2d 558 (1952); Lepper v. Unemployment Compensation Board of Review, 188 Pa.Super. 158, 146 A.2d 337 (1958). Claimant involvement in the causation of the unemployment is the sole focal point of § 3315(4) when read in the light of the public policy underlying the Act. If the unemployment is in any way the fault of the claimant, by reason of his participation in a labor dispute, he is disqualified for benefits; if, on the other hand, he is free of fault because of non-participation in the labor dispute, he is eligible for benefits. To the extent that any rationale in *Emrick* is in conflict herewith, it stands overruled.

\*     \*     \*     \*     \*     \*

For the reasons stated, we agree with the conclusion of the Superior Court that the claimants were not disqualified by § 3315(4) from unemployment compensation benefits.

Affirmed.

---

used to finance labor disputes". Thereupon, this Court concluded in *Dale*: "We think the public policy underlying the Unemployment Compensation Act, as a whole, creates an ambiguity in § 3315(4) in the meaning of the phrase 'last employed'." (271 A.2d at 37).

4. Statutory ambiguity, requiring judicial construction, is always regrettable. The General Assembly is able, of course, to cure such ambiguity or any unacceptable construction.