John T. HUBBARD, Petitioner below,
Appellant,

v.

UNEMPLOYMENT INSURANCE APPEAL
BOARD, Respondent below, Appellee.

Supreme Court of Delaware.

Submitted Nov. 18, 1975.

Decided Feb. 6, 1976.

Michael J. Goodrick, Theisen, Lank &
Mulford, Wilmington, for petitioner below,
appellant.

Jay H. Conner, Wilmington, for respondent below, appellee.

Before HERRMANN, C. J., DUFFY, J.,
and QUILLEN, Chancellor.

PER CURIAM:

This is an appeal from a decision of the
Superior Court affirming the denial of unemployment compensation to claimant-appellant John T. Hubbard by the Unemployment Insurance Appeal Board.

Appellant was employed by Chrysler
Corporation for approximately three years

when, on October 23, 1973, he was incarcerated at the State Correctional Institution in Smyrna, Delaware. On December 17, 1973, while still incarcerated, appellant was rehired by Chrysler under the Institution's Work Release Program. Four days after his return to work, however, Chrysler initiated a major cut-back due to the depressed demand for automobiles, and appellant was placed in a lay-off status along with many of his co-workers. He remained in this lay-off status until March 11, 1974, when he was rehired by Chrysler.

Appellant applied for unemployment compensation from the date of the lay-off. He reported to the Division of Unemployment Insurance in Wilmington on two occasions, but failed to report on January 16, 1974, the date on which he had been scheduled to report to substantiate his eligibility for compensation for the weeks ending January 5 and January 12, 1974. In an appearance before a Claims Deputy, appellant explained that his failure to report on January 16 was caused by the lack of available transportation due to the nation-wide gasoline shortage. The Claims Deputy denied benefits because of appellant's failure to meet reporting requirements and also because appellant was found not to have been "available for work", within the meaning of 19 Del.C., § 3314 (3), during his incarceration.

In an appeal to an Unemployment Compensation Referee, appellant initially prevailed, the Referee finding that the reporting requirement should be waived under the circumstances, and that appellant was "available for work" while incarcerated. Upon reconsideration, the Referee issued a decision denying benefits, finding that appellant's incarceration "was in itself restrictive of his active search for work and availability for work within the meaning of Section 3314(3)," and that the Legislature did not intend that an individual should be eligible for unemployment com-

pensation while incarcerated.* As an additional reason for denying compensation, the Referee noted that claimant's failure to report as instructed on January 16 "was in part due to the fact tthat he was necessarily dependent upon another to bring him to the office during his period of incarceration."

The Unemployment Insurance Appeal Board adopted the factual findings of the Referee and affirmed his decision denying benefits because of appellant's lack of availability and active search for work. Upon further appeal to the Superior Court the denial of compensation was again affirmed. The Court, applying a substantial evidence test, found that the Referee and the Board were justified in concluding that claimant was not available for work and actively seeking work within the meaning of 19 Del.C., § 3314(3), since there was no evidence in the record that, under the Work Release Program, an incarcerated individual is able to actively seek other employment generally or that he is available for employment throughout the employment area. In reaching its decision, the Superior Court refused to consider certain regulations of the Department of Corrections which relate to the Work Release Program. These regulations were submitted to the Court as tending to prove the availability for work of an inmate who is participating in the Work Release Program. The Court refused to consider the regulations on the ground that they were not made a part of the record at the administrative level.

■ We agree with the decision of the Superior Court. The only evidence in the record tending to prove either appellant's availability for work or his active search for work during the period of incarceration was appellant's affirmative answer to the Referee's question of whether he was able to and available for work. Given the fact of incarceration, the Referee and Board were justified in finding that this single

* This latter question was not reached by the Superior Court. Similarly, it is not reached in this opinion. Compare the concurring opinion of Chancellor Quillen.

statement was insufficient to establish appellant's availability for work within the meaning of 19 Del.C., § 3314(3). In any event, there is no evidence whatsoever which demonstrates that appellant actively sought other work during the time for which he seeks benefits.

■ Appellant now asks us to consider, as evidence of his availability for work under the Work Release Program, the regulatory guidelines for that Program which were published by the Department of Corrections. Upon appeal from a denial of unemployment benefits, the Superior Court is limited to consideration of the record which was before the administrative agency. *Ashmore v. Unemployment Compensation Commission*, Del.Super., 7 Terry 565, 86 A.2d 751 (1952); *Delgado v. Unemployment Insurance Appeal Board*, Del. Super., 295 A.2d 585 (1972); 19 Del.C., § 3323. As the regulations sought to be admitted were not a part of that record, they may not be considered now in this Court's determination of whether the evidence supported the findings of the Referee and Board.

To the extent that the Superior Court in *Henry v. Department of Labor*, Del.Super., 293 A.2d 578 (1972), departed from the general rule restricting an appellate court to a review of the record, we find it inapplicable to the instant case. The Court in *Henry* was faced with the question of whether a petition for review of a decision of the Unemployment Insurance Appeal Board was timely made. In reaching its decision the Court considered two letters, not a part of the official record, as evidence that the time allowed for appeal had been effectively extended by the Board's failure to timely respond to petitioner's letter requesting rehearing. The Court therefore considered the letters to be a part of the record, since they *should have* been included in the record as sent up by the Board. No such circumstances exist here. The Work Release Program guidelines were not made part of the evidentiary record at the ad-ministrative level below and are not a part of the record before this Court.

■ The Referee's findings of fact, affirmed by the Board, to the extent approved by the Superior Court, are supported by substantial evidence and are therefore conclusive. *Unemployment Insurance Appeal Board v. Duncan*, Del.Supr., 337 A.2d 308 (1975). The decision of the Superior Court is affirmed.

QUILLEN, Chancellor (concurring):

While I join in the opinion of the Court, it seems desirable to me to express two thoughts which do not appear in the per curiam opinion.

First, this case demonstrates the importance of presenting all of the evidence in the administrative proceeding within the Department of Labor. Frequently both claimants and employers appear without counsel before the Board and do not develop the factual record that is necessary to support their contentions. In cases such as this one, it is important for unions and others who assist claimants to impress upon them the importance of making their best case at the administrative level.

Second, it is important to note what this Court did not decide. The Referee and the affirming Board determined that the Legislature did not intend that an individual should be eligible for unemployment compensation while incarcerated. But that question was not reached by the Superior Court and it is not reached in the per curiam opinion of this Court. Although neither Court has given approval or disapproval to that portion of the Referee's decision, it can be construed as an administrative precedent. Therefore, even though I state an opinion on an issue which can be assumed in favor of the employee for the appellate purposes of this case, I want to expressly disassociate myself from that determination of the Referee.

There is no indication in Chapter 33 of Title 19 of the Delaware Code that the

Legislature intended to exclude from the benefits of that chapter all individuals who are incarcerated where all other requirements of eligibility are met. It is true that an employee is disqualified "if he has become unemployed by reason of commitment to any penal institution." 19 Del.C., § 3315(7).* But that focuses on the reason for unemployment and not the fact of commitment. Since that disqualification subsection specifically deals with the incarceration situation, I do not feel that judicial opinion should deem public policy to be more restrictive from the employee's point of view than the express provision of that subsection.

Nor can any legislative intention to exclude all incarcerated individuals be found in Chapter 65 of Title 11, dealing with the Department of Corrections. To the contrary, 11 Del.C., § 6532(a) provides that work assignments given to inmates within the correction facility shall, "to the maximum extent possible, . . . approximate normal conditions of employment in free agriculture and industry." This statement of purpose is helpful by analogy in appreciating work experiences offered to "trustworthy inmates" outside the prison walls, as authorized by 11 Del.C., § 6533. An integral part of the "normal conditions of employment" which exist in the free labor market is, since the enactment of unemployment compensation laws, a compensatory system to protect workers from the hazard of involuntary unemployment. The system exists for the benefit of all persons unemployed through no fault of their own who are sincerely cooperating to end their unemployment. *Johnston v. Chrysler Corp.*, Del.Supr., 178 A.2d 459 (1962). Those employed through a prison Work Release Program are not expressly excluded and, in my judgment, exclusion should not be automatically implied. Since the basic public policy of the statute is protection from the hazards of involuntary

unemployment, no person by interpretation of the Act should be excluded from its benefits unless the Act, itself, in so many words, has demonstrated fairly an intention to make such exclusion. *Emrick v. Unemployment Compensation Commission,* Del.Super., 173 A.2d 743, 745 (1961); *E. I. du Pont de Nemours & Co. v. Dale,* Del. Supr., 271 A.2d 35, 37 (1970); *Harper v. Unemployment Insurance Appeal Board,* Del.Super., 293 A.2d 813 (1972); *Lowe Bros., Inc. v. Unemployment Insurance Appeal Board,* Del.Supr., 332 A.2d 150, 152 (1975).

It is the legislatively declared public policy of this State that persons committed to institutional care shall be dealt with humanely, with effort directed to their rehabilitation, to effect their return to the community as safely and promptly as practicable. 11 Del.C., § 6531. Obviously, there is no better way to give a trustworthy inmate an opportunity to exist productively in society than by permitting him to work in a competitive market and by permitting him to enjoy beneficial incidents of such work. Even under the most conservative philosophy, this approach is better than having an inmate, and possibly his family, totally economically dependent on the State for support.

The fact of an individual's incarceration does not, in my opinion, *per se* eliminate an individual's availability for work and ability to seek work. Many people besides prisoners have transportation and other logistic difficulties. Incarceration can of course be a negative factor and, after conviction, incarceration can be presumed to be the fault of the employee. Without evidence of probative value to overcome the normal implications of incarceration, the fact of incarceration may, as in this case, justify the conclusion that the eligibility requirements have not been satisfied. Moreover, the restrictions of the Work

---

* In this case, as demonstrated by facts recited in the per curiam opinion, the appellant did not become unemployed by reason of his commitment or by any restriction resulting therefrom.

Release Program itself, either generally or as applied to a specific class of inmate or in a specific inmate's case, may be such as to preclude an inmate from establishing the eligibility requirements. But the prerequisites to eligibility are questions of fact to be determined from the evidence, and a prison inmate, who has been determined not to be a threat to society by his placement on work release and who becomes unemployed through no fault of his own, should, under the Act, be given the same opportunity to prove his eligibility as a non-incarcerated member of the labor market. The appellant in the instant case simply failed to meet his burden before the Referee and the Board.