**CITY OF WILMINGTON, Employer Below, Appellant,**

v.

**UNEMPLOYMENT INSURANCE APPEALS BOARD and Vanessa Wisher, Board & Employee Below, Appellees.**

Supreme Court of Delaware.

Submitted: Oct. 16, 1985.
Decided: Oct. 14, 1986.

Frederick H. Schranck, Asst. City Sol., Wilmington, for appellant.

Vanessa Wisher, pro se.

Before CHRISTIE, C.J., McNEILLY and MOORE, JJ.

MOORE, Justice.

This appeal presents the thorny question of when does a temporary employee's work service become so extended as to give rise to a legitimate claim for unemployment benefits at the job's end. Unfortunately, the applicable legislation is so vague as to place upon us the responsibility for establishing a clear limit to this right. If ever an issue required a court to engage in judicial legislation, this is such a case—and it commends itself to the General Assembly for prompt clarification.

The City of Wilmington (City), appeals a decision of the Superior Court affirming an award of unemployment benefits to appellee Vanessa Wisher. The City contends that the Superior Court and the Unemployment Insurance Appeals Board (the Board) erred as a matter of law in upholding the grant of benefits to Wisher despite her acceptance of employment with full knowledge that her job was for a fixed, limited term. We affirm the decision of the Superior Court for the reasons outlined below.

I.

Vanessa Wisher was employed by the City's Department of Parks and Recreation from October 12, 1982 until May 13, 1983, working 16 hours per week as a "recrea-tion leader." She was paid $3.95 per hour. Wisher knew that she was hired on a seasonal, part-time basis for a specific limited period of employment. She also knew that she was not entitled to such benefits as accrued to regular, full-time employees. After seven months, according to the terms of her employment, the job ended and she was discharged. It is undisputed that this was the sole reason for her termination.

Thereafter, Wisher applied for unemployment compensation. The Claims Deputy awarded her unemployment benefits, and following the City's appeal and a full hearing, the Referee affirmed the Claims Deputy. The City then appealed to the Board, which adopted the Referee's findings of fact and affirmed the decision of the Referee.

The City then appealed to the Superior Court on the ground that having accepted employment for a limited period of time, Wisher in effect had left work voluntarily at the end of her job, and was therefore disqualified from unemployment compensation benefits by 19 *Del.C.* § 3315(1) and *Wilmington Country Club v. Unemployment Insurance Appeal Board,* Del.Supr., 301 A.2d 289 (1973). In a brief opinion, the Superior Court rejected the City's arguments, holding that *Wilmington Country Club* had been limited to its facts by *Grier v. Unemployment Insurance Appeal Board,* Del.Supr., 306 A.2d 22 (1973). This appeal followed.

II.

The public policy underlying the Delaware Unemployment Compensation Act (the Act) is the elimination of economic insecurity due to involuntary unemployment. 19 *Del.C.* § 3301.[1] *See E.I. DuPont*

---

1. The statute provides:

As a guide to the interpretation and application of this chapter, the public policy of this State is declared to be as follows: Economic insecurity due to unemployment is a serious menace to the health, morals and welfare of the people of this State. Involuntary unemployment is therefore a subject of general interest and concern which requires appropri-

ate action by the General Assembly to prevent its spread and to lighten its burden which now so often falls with crushing force upon the unemployed worker and his family. The achievement of social security requires protection against this greatest hazard of our economic life. This can be accomplished by encouraging employers to provide more stable employment and by the systematic accu-

*De Nemours & Company v. Dale,* Del. Supr., 271 A.2d 35, 36 (1970). Delaware courts have interpreted the statute liberally in favor of the employee, so that "no person, by interpretation of the Act, should be excluded from its benefits unless the Act, itself, in so many words, has demonstrated fairly an intent to make such exclusion." *Dale,* 271 A.2d at 37. *See Lowe Bros., Inc. v. Unemployment Insurance Appeal Board,* Del.Supr., 332 A.2d 150, 153 (1975).

Section 3315 of the Act governs the disqualification of employees for benefits. "An individual shall be disqualified for benefits: (1) For the period of unemployment next ensuing after he has left his work voluntarily without good cause attributable to such work ..." 19 *Del.C.* § 3315(1). This Court has found knowing acceptance of employment "for a specific, limited duration" to amount to "voluntary termination of the employment upon the expiration of the limited occasion." *Wilmington Country Club v. Unemployment Insurance Appeal Board,* Del.Supr., 301 A.2d 289, 290 (1973). In *Wilmington Country Club,* benefits were denied an employee who worked intermittently as a bartender on half a dozen occasions, earning $77 over the period of a year.

> The nature of claimant's work for the Club was such that he left his employment voluntarily. When claimant accepted employment, he was aware that it was for a specific, limited duration. We think the acceptance of employment under these conditions amounted to voluntary termination of the employment at the expiration of the limited occasion.

301 A.2d at 290.

The *Wilmington Country Club* decision was soon limited by this Court's subsequent decision in *Grier v. Unemployment Insurance Appeal Board,* Del.Supr., 306 A.2d 22 (1973). In *Grier,* benefits were upheld for a bricklayer who, having accepted employment which had been intended to last until a certain project was completed, was terminated after one day for reasons beyond his control. The Court held that "[t]he ultimate brevity of the employment, alone, does not overcome the totality of the circumstances indicating, at the inception, the good-faith undertaking of actual and regular employment for an indefinite period." *Grier,* 306 A.2d at 23.

◼ Comparing the situation in *Grier* to that in *Dale,* the *Grier* court noted the similarity between the nature and duration of employment sufficient to remove a prior disqualification under both Section 3315(1) and Section 3315(4).[2] In *Grier,* the employee had previously been disqualified for leaving employment voluntarily, and upon termination from his subsequent (albeit brief) job as a bricklayer he then qualified for benefits. In *Dale,* the employee sought benefits after his termination from a temporary job he had assumed while on strike from his primary employer, but the Court had ruled that because the strike was the cause of the unemployment, he was disqualified for benefits by Section 3315(4). The *Grier* court ruled that in determining an employee's qualification status after a previous disqualification, one test is common to both sections: "the 'succeeding employment must be assumed with the intention to remain as permanently as the job allows.'" *Grier,* 306 A.2d at 24 (quoting *E.I. DuPont De Nemours & Co. v. Dale,* Del.Supr., 271 A.2d 35, 38 (1970)). It there-

mulation of funds during periods of employment from which benefits may be paid for periods of unemployment, thus maintaining purchasing power and limiting the serious social consequences of poor relief assistance. The General Assembly therefore declares that in its considered judgment the public good and the general welfare of the citizens of this State require the enactment of this measure, under the police power of the State, for the compulsory setting aside of an unemployment reserve to be used for the benefit of persons unemployed through no fault of their own. 19 *Del.C.* § 3301.

**2.** 19 *Del.C.* § 3315(4) provides:

> For any week with respect to which the Department finds that his total or partial unemployment is due to a stoppage of work which exists because of a labor dispute at the factory, establishment or other premises at which he is or was last employed;

fore follows that an intent to remain as permanently as the job allows, if sufficient to qualify an employee for benefits after a previous disqualification, may also be sufficient to qualify an employee for benefits *ab initio*.

The Court also distinguished *Grier* from *Wilmington Country Club*, declaring the latter case "manifestly inapposite" despite the employer's contention in *Grier* that the employee must have been deemed to have left this employment voluntarily because of its inherently temporary nature. *Grier*, 306 A.2d at 24.

### III.

This Court has held that benefits should not be denied unless it is clear that the intent of the Act is to exclude the employee from such benefits. *Dale*, 271 A.2d at 37; *Lowe Bros.*, 332 A.2d at 153. Whether Section 3315(1) disqualifies an employee from receiving benefits because of a voluntary termination is to be determined by considering the totality of circumstances of the employment. *See Grier*, 306 A.2d at 23; *Wilmington Country Club*, 301 A.2d at 290. One critical factor is whether or not the employee assumed the position with the intent to remain as permanently as the job allowed. *Grier*, 306 A.2d at 24.

■ Under the totality of the circumstances, Wisher should not be considered to have left employment voluntarily. Wisher, who remained employed for seven months until her job ended, demonstrated by her actions an intent to remain as permanently as the job allowed.

■ Moreover, as we said in *Grier*, "ultimate brevity" is not the sole criterion for determining whether employment is so limited and temporary as to carry with its acceptance an acquiescence in voluntary termination at the end of the employment term. The Act gives no guidance regarding any durational requirements for temporary employment so as to disqualify such employees for benefits. Instead, the Court is forced to turn to 29 *Del.C.* § 5903(17),

which excludes from the statutory definition of "state service" those "[t]emporary, casual, and seasonal employees employed for less than 130 working days [roughly, six months] in any fiscal year ..." While this definition is not precisely designated for use with the Act, it is nevertheless an indication of what the General Assembly would consider to be temporary employment. This is the only guide we have from the legislature. Thus, we adopt this durational standard, while at the same time urging the General Assembly to define more precise limits within the Act itself. Wisher's work for seven months takes her outside that category of temporary employees who therefore would be denied benefits on the basis of having voluntarily terminated their employment at the end of the job's term.

Moreover, we note that Wisher's employment was not of the sporadic, on-call sort upon which *Wilmington Country Club* turned. Though she only worked 16 hours per week, Wisher worked on a regular basis for seven months.

Finally, considering that the clear statutory policy of the Act is to lighten the "crushing force" of the burden of unemployment, to encourage more stable employment by employers, to assist in maintaining an employee's purchasing power, and to limit the "serious social consequences" of welfare, all of which may befall one who becomes unemployed through "no fault of their own" (see 19 *Del.C.* § 3301, n. 1 *supra* ), we perceive that labels alone, i.e. "temporary" vs "permanent" employment, cannot control. Thus, an approach which confers benefits, unless the Act itself excludes them clearly and unambiguously, is mandated. *Dale*, 271 A.2d at 37.

■ Therefore, we conclude that under the totality of the circumstances, the period and nature of Wisher's employment was such that at the time of her termination, she became unemployed because of a lack of work, and not because she left her position voluntarily. By this "bright line"

standard, an employee, designated as "temporary", who works for less than 130 days will be considered to have left work voluntarily at the termination of employment, and therefore disqualified from receiving unemployment benefits under Section 3315(1) and the rule in *Wilmington Country Club*.

### IV.

Vanessa Wisher's employment of seven months' duration, though part-time, was of sufficient regularity and duration as to be considered more than temporary for the purposes of the Act. The acceptance of such employment does not carry with it an acquiescence in voluntary termination at the end of the employment term and a concomitant disqualification from benefits under Section 3315(1) and *Wilmington Country Club*. Accordingly, we uphold the decision of the Superior Court granting unemployment compensation to Wisher. At the same time, we respectfully call upon the General Assembly to address this issue of durational standards.

AFFIRMED.