IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| **KATHLEEN L. SMITH**, | : C.A. No. S21A-05-001 |
| | : C.A. No. S21A-05-002 |
| Appellant, | : |
| | : |
| v. | : |
| | : |
| | : |
| **UNEMPLOYMENT INSURANCE** | : |
| **APPEAL BOARD,** | : |
| | : |
| Appellee. | : |

Submitted: September 24, 2021
Decided: October 6, 2021

*On Appeal from the Unemployment Insurance Appeal Board*

**AFFIRMED**

**MEMORANDUM DECISION AND ORDER**

Kathleen L. Smith*, pro se*, Apt. 9, 32985 Shoppes at Long Neck, Millsboro DE 19966, Appellant.

Victoria W. Counihan, Esquire and Victoria E. Groff, Esquire, Delaware Department of Justice, 820 North French Street, Wilmington, DE, 18901, Attorneys for Appellee.

**KARSNITZ, J.**

This case involves two separate determinations by two different Claims Deputies which were both adverse to Kathleen L. Smith ("Appellant"). The first determination was that Appellant was disqualified from receiving unemployment insurance benefits. The second determination was that Appellant was liable for the repayment of an overpayment of unemployment insurance benefits. The heart of the question before me is: does Appellant's failure to timely appeal the first disqualification determination foreclose her ability to raise disqualification issues in her timely appeal of the second overpayment determination?

## I.    INTRODUCTION

I will consider these two cases together, as they rest on the same underlying facts and parallel decisions below. Appellant appeals the decisions of the Unemployment Insurance Appeal Board (the "Board") that she was disqualified from receiving unemployment benefits under Delaware law, which resulted in her being overpaid benefits in the amount of $400.00 per week under Delaware law (C.A. No. S21A-05-002) and $600.00 per week under the Federal Pandemic Unemployment Compensation ("PUC") program under the CARES Act (C.A. No. S21A-05-001).[1] This resulted in Appellant's liability for an overpayment

---

[1] If Appellant was not eligible for any amount of Delaware unemployment insurance benefits, she

to her by the State in the amounts of $1,200.00 and $1,800.00 for the weeks ending May 9, May 16, and May 23, 2020, for Delaware and Federal benefits, respectively. The Board's decision is affirmed for the reasons stated below.

## II.    FACTUAL AND PROCEDURAL HISTORY

During the summer season, Appellant was employed as the full-time General Manager of the Sea Esta Motel 1 in Dewey Beach, Delaware. When the motel closed for the off-season, she worked part time at McDonald's. Then the COVID pandemic hit, and in the winter of 2020, Claimant lost the McDonald's position. On February 16, 2020, she filed for both Delaware and PUC unemployment benefits. On March 16, 2020, she returned to her full-time job at the motel, but just five days later -- on March 21, 2020 -- the owner of the motel closed it down due to COVID. Appellant again applied for unemployment benefits. In April 2020, McDonald's asked her to resume part-time work there, but she declined due to COVID on the advice of her doctor since she was 60 years old and had severe allergies.[2] On May 25, 2020, Appellant returned to her full-time job at the motel and worked there until October 16, 2020, when the

_____

was not eligible for any Federal benefits. If Appellant was eligible for even $1.00 of Delaware unemployment insurance benefits, she was eligible for the full amount of Federal benefits. There is no "sliding scale" correlating Delaware and Federal benefits.

[2] The benefits in question are for the weeks ending May 9, May 16, and May 23, 2020, which occurred during  the time she declined to return to the part-time McDonald's job.

3

motel closed for the season.  She applied for unemployment benefits again.

On September 17, 2020, a Claims Deputy determined that Appellant was ineligible for unemployment benefits for the weeks ending May 9, May 16, and May 23, 2020, because she

> refused a suitable offer by [McDonald's] to return to work and was deemed to have voluntarily quit.  In a voluntary leaving situation, Claimant must provide evidence of good cause for leaving one's employment in connection with the employment.  Claimant must also exhaust all internal administrative remedies to rectify asserted issues.  Because Claimant could not establish these two elements, she is disqualified from the receipt of benefits.

Appellant claims that, due to pandemic-related delays by the Post Office, she never received notice of this determination.  She also claims that she was verbally informed by the Georgetown unemployment office that her part-time compensation ($9.25 per hour for 8–12 hours per week) was not enough to adversely affect her unemployment compensation. In any event, the determination was not appealed by Appellant within the requisite ten (10) day period and thus became final on September 27, 2020.

On January 21, 2021, another Claims Deputy determined that Appellant, due to non-fraudulent actions (i.e., a mistake by Appellant), had been overpaid benefits for the weeks ending May 9, May 16, and May 23, 2020, and was liable for the repayment of that overpayment to the Delaware Department of Labor.  Appellant timely appealed this determination to an Appeals Referee on January 25, 2021.  This is the appeal that has worked its way up to me for determination today.

The Referee's hearing was held on February 11, 2021. Neither party called witnesses. The Division of Unemployment Insurance Appeals introduced five documents. Appellant sought to introduce documents (pay stubs from both McDonald's and the motel), but the Referee declined to admit them and informed Appellant she could attach them to her subsequent appeal to the Board. In her Findings of Fact, the Referee found that there was no evidence that the determination of ineligibility was returned as undeliverable by the Post Office, and there was no evidence of an appeal. The Referee did not consider Appellant's arguments as to why she failed to return to the part-time McDonald's job, stating that because Appellant had failed to timely appeal that determination, the determination had become final and legally binding and was non-reviewable. Thus, the Referee limited herself to considering whether Appellant was liable for the repayment of the overpayment. She found that Appellant was so liable and affirmed the determination of the Claims Deputy below.

Appellant timely appealed the overpayment determination to the Board, which held a telephonic hearing based solely on the record on March 31, 2021, and mailed its decision to Appellant on April 19, 2021. It is unclear whether the Board considered the documents proffered by Appellant (pay stubs). The Board stated:

> Under Delaware law, the only issue to be considered during an appeal of an overpayment decision are: (1) whether Claimant received the overpayment notice; (2) whether the amount of the overpayment is accurate; and (3) whether the overpayment is directed toward the proper

5

individual.[3]  Here, it appears that Claimant is disputing the underlying decision finding her disqualified to receive unemployment benefits. *Delaware law, which the Board must follow, does not permit the Board to address whether Claimant was or was not qualified to receive unemployment benefits in the appeal of an overpayment decision.* [Emphasis supplied]

The Board found that all three factors were correctly decided below and affirmed the decision of the Referee.

Appellant timely appealed the Board's decision to this Court.  This is my decision on her appeal.

## III.  STANDARD OF REVIEW

On review, pursuant to 19 *Del. C.* § 3323, "the findings of [the Board] as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the Court shall be confined to questions of law."[4]  Therefore, my role upon appeal is to determine whether the Board's findings are "supported by substantial evidence and free from legal error."[5]  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[6]  Moreover, I may only consider the record before me.[7]  In reviewing

---

[3] Citing *Starcks v. Unemployment Insurance Appeal Board*, 2013 WL 4848101 (Del. Super. July 30, 2013).

[4] 19 *Del. C.* § 3323 (2012); *Coleman v. Dep't of Labor,* 288 A.2d 285, 287 (Del.Super.1972) ("[T]he credibility of the witnesses, the weight of their testimony, and the reasonable inferences to be drawn therefrom are for the Board to determine.").

[5] *Ridings v. Unemployment Ins. Appeal Bd.,* 407 A.2d 238, 239 (Del.Super.1979); *Crews v. Sears Roebuck & Co.,* 2011 WL 2083880, at *2 (Del. Super. May 11, 2011).

[6] *Oceanport Indus. v. Wilmington Stevedores,* 636 A.2d 892, 899 (Del.1994).

[7] *Hubbard v. Unemployment Ins. Appeal Bd.,* 352 A.2d 761, 763 (Del.1976).

the record for substantial evidence, I consider the record in "the light most favorable to the party prevailing below."[8]

I will not disturb the Board's determination absent an abuse of discretion by the Board.[9] The Court will find an abuse of discretion only if "the Board 'acts arbitrarily or capriciously' or 'exceeds the bounds of reason in view of the circumstances and has ignored recognized rules of law or practice so as to produce injustice.' "[10]

## IV.   ANALYSIS

This case is quite similar to *Starcks v. Unemployment Insurance Appeal Board*, 2013 WL 4848101 (Del. Super. July 30, 2013). In *Starcks*, the Board's decision affirmed findings by a Referee that Claimant received and was liable for an overpayment of unemployment benefits. The Board based its determination on the record, including (1) a prior determination by a Claims Deputy disqualifying Claimant from payment of unemployment benefits; (2) the appeal of the Claims Deputy's disqualification determination to a Referee; (3) the Referee's subsequent decision upholding the Claims Deputy's determination; (4) Claimant's failure to

---

[8] *Steppi v. Conti Elec.,* 2010 WL 718012, at *3, 991 A.2d 19 (Table) (Del. Mar. 16, 2010); *Gen. Motors Corp. v. Guy,* 1991 WL 190491, at *3 (Del. Super. Aug. 16, 1991).

[9] *Crews,* 2011 WL 2083880, at *2; *see also Funk v. Unemployment Ins. Appeal Bd.,* 591 A.2d 222, 225 (Del.1991) ("The scope of review for any court considering an action of the Board is whether the Board abused its discretion.").

[10] *Straley v. Advanced Staffing, Inc.,* 2009 WL 1228572, at *2 (Del.Super.2009) (citations omitted).

timely or untimely appeal the Referee's disqualification decision; (5) the transcript of a subsequent hearing before a different Referee who found that Claimant had been overpaid benefits; and, (6) the Referee's decision regarding the overpayment of benefits. On appeal to this Court, Claimant contended that she never received notice of the decision disqualifying her from receiving unemployment benefits, and that she would have appealed that disqualification decision had she received notice. Claimant also contended that the calculation of the overpayment that she owed was incorrect.

## A. I cannot consider Appellant's arguments regarding the disqualification decision.

The *Starcks* Court held:

A court cannot invoke its appellate jurisdiction unless an appeal is submitted within the time frame required by law. The Court concludes that the record demonstrates that [Appellant] was disqualified from the receipt of unemployment benefits. [Appellant] has never appealed the disqualification decision and it is now a final non-appealable decision.

A decision of an appeals tribunal (the Referee) becomes final unless within 10 days after the date of notification or mailing of that decision further appeal is initiated under 19 Del. C. § 3320.35 The record here is that [Appellant] failed to appeal the disqualification decision. [Appellant] has argued that she would have appealed the disqualification decision if she had known about it but, clearly, she has never formally appealed the disqualification decision— either a timely appeal or an untimely appeal supported by an argument of excusable neglect. Therefore, the disqualification decision became final and binding.

On appeal, the Court reviews the case on the record and does not hear new evidence. Where a claimant has received adequate notice of the

8

effect of a disqualification decision and of the right to appeal it, the claimant cannot appeal the basis, or merits, of the disqualification through a subsequent appeal of an overpayment determination. As such, the Court will not overturn the overpayment decision based on arguments that [Appellant] may have been improperly disqualified or that she would have, upon notice, appealed the disqualification decision.[11]

In the case before me, Appellant never appealed the decision disqualifying her from unemployment benefits, either timely or untimely. In that appeal she could have raised issues related to her failure to receive the notice of disqualification, her medical condition and its relationship to the COVID pandemic, and information provided to her by the Georgetown unemployment office. However, she did not do so and is estopped from doing so now.

## B. The Board's decision to affirm the overpayment decision is supported by substantial evidence and free from legal error.

The recoupment of overpaid benefits is governed by 19 *Del. C.* § 3325. This statute states that any person who receives benefits of which they are deemed not to be entitled shall be required to repay the amount of overpayment in cash, "regardless of whether such sum was received through fraud or mistake, or whether he was legally awarded the payments of benefits at the time but on appeal was subsequently found not to be entitled thereto."[12] Before initiating the collection of the overpayment amount, the Department of Labor must issue a notice of overpayment

---

[11] *Starcks*, 2013 WL 4848101, at *4 (Del. Super. July 30, 2013) (citations omitted).
[12] 19 *Del. C.* § 3325.

9

and an order for recoupment to defendant.[13] "Unless the person files an appeal to an Unemployment Insurance Appeals referee within 10 days after such order was mailed to the person at their last known address, the order shall be final and recoupment shall be made in accordance with the order."[14]

This Court held, in *Smith v. Unemployment Ins. Appeal Bd.,* that an individual who fails to report wages, and subsequently is disqualified from receiving benefits, is required to repay all of the benefits that were received while being ineligible to receive them.[15] The Court stated that "it was [Claimant's] failure to report [his] earnings that disqualified [him] from receiving unemployment benefits; thus the issue before the court is whether [he] received an overpayment of benefits, not whether he was eligible for unemployment benefits."[16] The decision in *Smith* is not controversial as it tracks the plain language of the statute which provides that:

> Any person who has received any sum of benefits under [Chapter 33] to which it is finally determined that the person was not entitled shall be liable to repay in cash said overpayment, to the Department for the Unemployment Compensation Fund, or to have such sum deducted from future benefits payable to the person under [Chapter 33]. The person shall be so liable regardless of whether such sum was received through fraud or mistake, or whether that person was legally awarded the payment of benefits at the time but on appeal was subsequently found not to be entitled thereto.[17]

---

[13] *Id.*
[14] *Id.*
[15] *Smith v. Unemployment Ins. Appeal Bd.,* 2013 WL 1718059, at * 1 (Del. Super. Apr. 22, 2013).
[16] *Id.*
[17] 19 *Del. C.* § 3325.

*Smith* makes it clear that, once the disqualification decision is final, then the only matter before me is whether any benefits were received during the disqualification period. Under *Smith*, the issue is not whether Appellant was entitled to unemployment benefits; rather, it is whether she received the payment of benefits at a time when she was not so entitled. The Claims Deputy determined that Appellant was ineligible to receive benefits for the weeks ending May 9, May 16, and May 23, 2020. The Referee upheld, in the disqualification decision, the Deputy's eligibility determination. The disqualification decision became final when Appellant failed to appeal – either timely or untimely -- that decision. Subsequently, another Claims Deputy determined that Appellant received benefits in the amount of $1,200.00 and $1,800.00 during the period of ineligibility. The Referee upheld, in the overpayment decision, the Claim Deputy's eligibility determination. Appellant's appeal of the overpayment decision is now before me. She acknowledges receipt of the overpayment decision and that she is the proper individual to receive that notice. Thus, the only issue on appeal is whether the amount of overpayment is accurate.[18]

I find that the Board's decision is supported by substantial evidence in the record and free from legal error. The Board may affirm a decision "on the basis of the evidence previously submitted to the appeal tribunal."[19] Here, the Board

---

[18]*Murray v. Unemployment Ins. Appeal Bd., Dep't of Labor,* 1994 WL 637088 at *2 (Del. Super. Apr. 22, 1994).
[19] 19 *Del. C.* § 3320(a).

considered evidence from the hearing that was held before the Referee. The Department of Labor submitted evidence, including a payment history, which showed that Appellant was overpaid benefits, of which she was not entitled, in the amount of $1,200.00 and $1,800.00 during the period of ineligibility – the three weeks ending May 9, May 16, and May 23, 2020. The overpayment amount is accurate. The Board correctly affirmed the Referee's decision to uphold the Deputy's determination that Appellant is liable for an overpayment of benefits in the aforementioned amounts.

## V.    CONCLUSION

The facts of this case, taken together with the Board's binding credibility determination, lead me to conclude the Board's decision was supported by substantial evidence and free from legal error.  Therefore, the Board's decision finding that Appellant is liable for the repayment of an overpayment of unemployment insurance benefits is **AFFIRMED**.

**IT IS SO ORDERED.**

/s/ Craig A. Karsnitz

cc:    Prothonotary
Kathleen L. Smith
Unemployment Insurance Appeal Board