# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| PLANNED PARENTHOOD OF DELAWARE, INC., | ) ) ) | |
| Appellant, | ) ) ) | C.A. No. N18A-11-006 CEB |
| v. | ) ) | |
| YOLANDA M. CORBIN and, UNEMPLOYMENT INSURANCE APPEAL BOARD, | ) ) ) ) | |
| Appellee. | ) ) ) | |

Submitted: May 30, 2019
Decided: August 8, 2019

## MEMORANDUM OPINION

*Appeal From the Decision of the
Unemployment Insurance Appeal Board.*
**REVERSED and REMANDED.**

Jennifer Gimler Brady, Esquire and Jennifer Penberthy Buckley, Esquire, POTTER ANDERSON & CORROON, LLP, Attorneys for Appellant Planned Parenthood of Delaware, Inc.

Scott T. Earle, Esquire and Zachary A. Silverstein, Esquire, ZARWIN BAUM DEVITO KAPLAN SCHAER TODDY, P.C., Attorneys for Appellee Corbin.

Daniel C. Mulveny, Esquire, Deputy Attorney General for the STATE OF DELAWARE, Attorney for Appellee Unemployment Insurance Appeal Board.

**BUTLER, J.**

## I.    FACTUAL BACKGROUND

Yolanda Corbin ("Corbin" or "Claimant") worked at Planned Parenthood of Delaware, Inc. ("PPDE"), as a revenue cycle manager from March 2015 until August 14, 2017, when she was terminated. Shortly thereafter, Ms. Corbin filed a claim for unemployment benefits.

Ms. Corbin's termination came at the end of a string of problems with her employment resulting in a number personnel actions.[1] In October 2015 there was a "coaching plan" formalizing some of her shortcomings on the job.[2] In January 2017 there was a "verbal warning" followed by a "compliance discussion."[3] By July of 2017, Corbin was given a "performance improvement plan."[4]

Then, in August 2017, PPDE learned that Corbin had approached an employee in the payroll department and told her she (Corbin) was "working on a project regarding people's salary" and seeking pay information on other employees within

---

[1] All references to the Certified Record of the Unemployment Insurance Board, Docket Entry No. 8, Trans. ID No. 62930421 (January 30, 2019), will be cited herein as "R. at __."

[2] R. at 6-7 (Employee coaching/planning form & action planning worksheet, October 2, 2015).

[3] R. at 8 (Employee verbal/written warning, January 3, 2017).

[4] R. at 485 (Decision of appeals referee at p. 2).

1

PPDE.[5] In fact, Corbin was not working on an employer-authorized project and salary disclosures violated an employer's privacy policy. This became the "final straw" and triggered Corbin's termination.

In its formal notice of termination, PPDE listed the following deficiencies as the basis for its actions: 1) Corbin misrepresented to a payroll clerk that Corbin was working on a project and needed management pay information; 2) failed to meet the basic competencies of her position despite multiple coaching and performance improvement communications; 3) reacted poorly to coaching and feedback, including responding with emails to her supervisor and HR manager with malicious, false and harmful statements; and 4) failed to take responsibility for completing her work and instead passing it off to others.[6]

## II.    PROCEDURAL HISTORY

Upon application for unemployment benefits, PPDE filed a response. A claims deputy ruled that Corbin's termination was without just cause and she was eligible to receive unemployment benefits as a result.[7] PPDE appealed that determination.

---

[5] R. at 40 (Statement of PPDE payroll clerk, August 29-30, 2017).

[6] R. at 15 (PPDE Employee Termination Form for Corbin, August 15, 2017).

[7] R. at 42-43 (claims deputy's Notice of Benefits Determination, September 1, 2017).

2

The dispute then came to an appeals referee, who heard the evidence *de novo*, on a record that was transcribed.[8] At that hearing, the Human Resources manager for PPDE explained that the performance improvement plan was an effort to bring Corbin's performance up to par, but her dishonesty in requesting management pay information was a step beyond the employer's tolerance, and she was terminated.[9]

The appeals referee reversed the ruling of the claims deputy, concluding that Corbin was not entitled to benefits. The appeals referee ruled:

> While poor performance without proof of intentional or gross misconduct as its cause will not disqualify a discharged individual from the receipt of unemployment insurance benefits, this tribunal is left with the impression that her failure to satisfactorily meet expectations was essentially intentionally insubordinate. However, the final incident Claimant is alleged to have committed makes the issue moot, in that it allows for the immediate termination of employment for any such violation.[10]

Ms. Corbin then appealed the referee's decision to the Unemployment Insurance Appeals Board ("UIAB").

At the UIAB hearing, the Board asked the parties to limit their presentation to materials not already in the record as the Board had the record of proceedings before the appeals referee. Corbin testified before the Board that she worked in the finance

---

[8] R. at 68-145 (Transcript of hearing before appeals referee, October 26, 2017).

[9] R. at 79-91 (testimony of PPDE HR manager).

[10] R. at 54 (Decision of appeals referee).

3

area of PPDE and had access to the pay information of all employees. She denied having asked any other employee to look up pay information of other employees on her behalf. Finally, she testified that other employees had accessed employee pay information without discipline. PPDE appeared at the hearing, but rested on the record established before the appeals referee.

The UIAB reversed the appeals referee and sided with Corbin. As to her work performance, the Board said only that "[t]he majority finds that Employer has failed to provide sufficient evidence showing that Claimant's substandard conduct was willful such that there were would be just cause to terminate Claimant."[11] As to the final straw evidence that Corbin asked a coworker to look up salary information as part of a project Corbin was working on, the Board, pointing to Corbin's claim that others had looked up such information in the past without discipline, held that "Employer's evidence does not sufficiently outweigh Claimant's evidence that the majority can conclude there was just cause to terminate Claimant."[12]

PPDE has appealed the decision of the UIAB, invoking this Court's jurisdiction for appellate review.

---

[11] R. at 154 (written opinion of the Board, November 5, 2018).

[12] R. at 155 (written opinion of the Board, November 5, 2018).

4

### III.    STANDARD OF REVIEW

This Court is limited to consideration of the record before the administrative agency when reviewing UIAB decisions.[13] The Court must determine whether the board findings of fact and conclusions of law are free of legal error and supported by substantial evidence in the record.[14] The Court does not weigh evidence, determine issues of credibility related to testimony or the record, or make its own findings of fact.[15] Sitting in appellate review, the Court merely determines if the evidence is legally adequate to support the agency's factual findings.[16]

---

[13] *Wilson v. Unemployment Ins. Appeal Bd.,* 2011 WL 3243366 at *2 (July 27, 2011), *citing Hubbard v. Unemployment Ins. Appeal Bd.,* 352 A.2d 761, 763 (Del.1976).

[14] *Wilson v. Unemployment Ins. Appeal Bd.,* 2011 WL 3243366 at *2 (July 27, 2011), *citing Unemployment Ins. Appeal Bd. v. Martin,* 431 A.2d 1265, 1266 (Del.1981); *Pochvatilla v. United States Postal Serv.,* 1997 WL 524062, at *2 (Del.Super.1997); 19 Del. C. § 3323(a)("In any judicial proceeding under this section, the findings of the [UIAB] as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the Court shall be confined to questions of law.").

[15] *See Johnson v. Chrysler Corp.,* 213 A.2d 64, 66 (Del.1965).

[16] *Wilson v. Unemployment Ins. Appeal Bd.,* 2011 WL 3243366 at *2 (July 27, 2011), *citing Majaya v. Sojourners' Place,* 2003 WL 21350542, at *4 (Del.Super.2003); *see* 19 *Del. C.* § 3323(a) (absent fraud, the factual findings of the Board shall be conclusive and the jurisdiction of a reviewing court shall be confined to questions of law).

Where a party bearing the burden of proof fails to convince the Board below, the resulting findings of fact can be overturned by the Court "only for errors of law, inconsistencies, or capricious disregard for competent evidence."[17]

## IV.    ANALYSIS

The Court is mindful of our deferential standard of review of decisions of administrative agencies. But we must also be mindful that even limited review is not "without teeth" and, particularly where there appears to be a process error, we must be concerned whether a faulty process may have produced a faulty result.[18]

This duty to review the record is particularly acute where the UIAB has overruled the appeals referee after the appeals referee took live testimony and made factual findings and legal conclusions based upon that testimony.

In reviewing the record, we are aided by the transcript of the testimony before the appeals referee, his formal Findings of Fact and Conclusions of Law, as well as the transcript of the hearing before the Board and its written "Decision Below," its "Summary of the Evidence" and its "Findings of Fact and Conclusions of Law."

---

[17] *Wilson v. Unemployment Ins. Appeal Bd.*, 2011 WL 3243366 at *2 (July 27, 2011), *citing Ridings v. Unemployment Ins. Appeal Bd.*, 407 A.2d 238 (Del.Super.1979).

[18] *See generally, Murphy & Landon, P.A. v. Pernic*, 121 A.3d 1215 (Del. 2015).

The Court notes, significantly, that at the outset of the Board hearing, the parties were instructed by the Board, "[t]his is the Claimant's opportunity to explain to the Board why she disagrees with the referee's decision. The Board has reviewed all the testimony and evidence that was presented to the referee. *Please present only new evidence, new testimony and the reasons why you disagree with the referee's decision.*"[19] As the prevailing party before the appeals referee, PPDE obviously did not disagree with the referee's decision and had nothing to add.

While the Board announced that it had "reviewed" all the testimony before the appeals referee, its written "Decision Below" is essentially a copy of the referee's formal, written Findings of Fact and contains no material from the transcript whatsoever. The only "Summary of the Evidence" in the Board decision is the summary of the evidence before the Board, which according to the Board's own mandate, consisted solely of the Claimant's testimony and arguments why she felt the referee ruled in error. There is thus no evidence that the Board considered, or even saw, the transcript of the proceedings before the appeals referee. Adopting the referee's Findings of Fact may be inconsequential when the Board elects to adopt his ultimate conclusion, but reversing the appeals referee would seem to mandate a more searching inquiry into exactly what was before the referee.

---

[19] R. at 161 (transcript of hearing before UIAB, October 10, 2018)(emphasis added).

7

This problem is more acute here because despite the Board's admonition to confine the testimony to new material, Corbin's testimony before the Board was not new evidence or testimony. She argued to the Board that 1) the coworker that informed management that Corbin had sought employee pay information was a liar, 2) Corbin already had access to employee pay information and did not need help and 3) another employee had published pay information and nothing happened to him.[20] These arguments were specifically credited by the Board in its final ruling and, because it was a reversal of the appeals referee, they take on more significance as they apparently turned the Board's decision in favor of Corbin.

But Corbin had already testified before the appeals referee that the employee that she allegedly approached was a liar.[21] On this point, PPDE's witness testified that she spoke to the employee in question who both told and wrote down what Corbin said to her.[22] The alleged falsehoods had to do with evidence that the coworker texted Corbin asking Corbin if she knew anyone who would falsify documents concerning her weight loss surgery.[23] Since Corbin testified that they were friends, it is anybody's guess what the context of this text message was, but its

---

[20] R. at 162-64 (testimony of Corbin before the Board).

[21] R. at 130 (testimony of Corbin before the appeals referee).

[22] R. at 102-106 (testimony of PPDE compliance officer before appeals referee).

[23] R. at 150 (text messages between PPDE payroll clerk and Corbin, July 2017).

8

value as evidence that the employee lied about being approached to provide confidential PPDE payroll information is dubious at best. Lying about one's weight is a virtual national pastime; lying about a serious incident involving improper conduct by a coworker is something else altogether. While the appeals referee took in all this evidence, the Board did not. And the appeals referee did not include it in his formal findings.

Corbin also testified before the appeals referee that she already had access to employee pay information and did not need to ask for help in getting it.[24] Her argument before the Board was not new. Had the Board read the transcript of the hearing before the referee, it would have seen that the appeals referee specifically discussed and understood that "access" to payroll information and "authorization to look" are two quite different things.[25] Had Corbin accessed the information through her own computer, a simple audit would have revealed it; getting a payroll clerk with permitted access to do so would not.

Finally at the appeals referee hearing, the question whether another employee had accessed pay information without sanction was addressed.[26] Again, this was not a new argument. At the referee hearing, PPDE agreed that an employee *with*

---

[24] R. at 111 (testimony of Corbin before appeals referee).

[25] R. at 102-106 (testimony of PPDE compliance officer before appeals referee).

[26] *Id.*

9

*authorized access* to the information had published it. PPDE believed that Corbin's primary wrongdoing was her attempt to gain access that she knew she was not authorized to have.[27] Moreover, the employee who published the pay information was, in fact terminated, albeit for that and other reasons.[28] So Corbin's reference before the Board to the other employee was not well taken – they were different wrongs and Corbin misstated both the wrong done and the ultimate sanction.

The point of all this is that these issues were all raised before the appeals referee but received bare mention in the referee's written findings. They were certainly not "new testimony" or "new evidence" in accordance with the Board's directive before its own hearing began. Rather, they were Corbin's arguments that were implicitly rejected by the referee. Having assured the parties that it was well familiar with the full record before the appeals referee, the Board should not have expected PPDE to attempt a full on rebuttal of Corbin's arguments before the Board as these same arguments had been raised and rebutted before the referee. The parties were told not to raise the same issues or arguments again. Corbin's failure to follow the Board's directive should not inure to her benefit. Indeed, if the Board had read the transcript of the hearing before the appeals referee, one might presume the Board

_____

[27] R. at 103-104.

[28] R. at 103-104.

10

would have stopped Corbin as she was clearly repeating arguments already rejected by the appeals referee.

The Board's restriction of PPDE's arguments on appeal to the Board created a process problem that unfairly benefitted Corbin and prejudiced PPDE. Admittedly, that problem would have been ameliorated somewhat had the Board examined the transcript of the hearing before the appeals referee, but there is no evidence that it did so. Likewise, the problem might have been ameliorated if PPDE had simply ignored the Board's admonition to limit argument to new matters not raised below. But there is no rule that grants a party the right to break the rules. The Board set the rules. PPDE followed them.

All of this resulted in a proceeding before the Board that suffered from ambiguous direction from the Board and flawed logic in its ultimate result. The Court will therefore remand this matter in order for the Board to hear all evidence and argument from both sides. The Board is certainly free to undertake whatever remedial measure it deems necessary to ensure that both sides are able to present their case to the "neutral and detached arbiter" that we must presume the Board to be.

While this ends the Court's inquiry, it bears mention that the Court has reviewed the regulations regarding hearings before the Board and notes that

11

proceedings before the appeals referee are regulated in some detail.[29] The Board's directive to the parties at the beginning of the hearing here are consistent with its regulations: "The parties shall not re-litigate the case presented to the Referee, but may present additional evidence."[30] Unfortunately, the regulations are silent as to what standard of review the Board is to apply to findings of fact made by the appeals referee. And they are silent as to what to do when an appellant to the Board wishes to "present additional evidence" that is not "additional" or "evidence" but instead just re-argument of issues already decided by the appeals referee.

Moreover, while the Court is restricted to a deferential standard of review of findings by the Board, the Board apparently is not similarly restricted in its review of findings by the referee who has actually seen and heard the witnesses. This understandably leaves the parties in a vague netherworld before the Board, forced to guess what it may rely on from the previous proceedings and unsure by what standards the record below will be judged. The Board would do well to use its rulemaking authority to formalize its standard of reviewing findings by the appeals referee. Clear standards of review of the appeals referee's findings and clear

---

[29] *See* 19 *Del. Admin. Code* 1200-UNEMP 18.

[30] 19 *Del. Admin. Code* 1201-UNEMP 4.1.

12

standards for what is admissible new evidence before the Board may assist future litigants in their journey to a just and fair result.

## V. CONCLUSION

At this point, it is not clear whether the Board considered the full record and testimony before the appeals referee or only the referee's written Findings and Conclusions. Neither is it clear whether the limitations the Board placed on the testimony or evidence before the Board unfairly or mistakenly restricted PPDE in responding to the statements by Corbin before the Board, which improperly reiterated materials already argued before the referee and triggered the Board's reversal of the referee. The Court cannot review what it cannot understand.

Pursuant to 29 *Del. C.* §10142(c), "If the Court determines that the record is insufficient for its review, it shall remand the case to the agency for further proceedings on the record."[31] The Court concludes that this is the appropriate remedy in this case.

This matter is hereby **REVERSED and REMANDED.**

**IT IS SO ORDERED.**

Judge Charles E. Butler

---

[31] 29 *Del. C* §10142(c).