# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

ANTONIO CAMACHO, )
)
      Appellant, )
)
    v. ) C.A. No. N23A-07-006 PAW
)
)
UNEMPLOYMENT INSURANCE )
APPEAL BOARD, )
)
      Appellee. )

Submitted: November 15, 2023
Decided: February 29, 2024

*On Appeal from the Unemployment Insurance Appeal Board;*

**AFFIRMED.**

## <u>MEMORANDUM OPINION AND ORDER</u>

Antonio Camacho, *pro se*, *Appellant*.

Victoria Counihan, Esq., of the Delaware Department of Justice, *Attorney for Appellee*.

**WINSTON, J.**

## I.    <u>INTRODUCTION</u>

This appeal stems from an Unemployment Insurance Appeal Board's (the "Board") decision affirming findings by an appeals referee (the "Referee") from the Department of Labor, Division of Unemployment Insurance (the "Division") that Appellant, Antonio Camacho, received and was liable for overpayment of unemployment benefits. The Board based its determination on the record, including the determination by the claims deputy (the "Claims Deputy") disqualifying Mr. Camacho from unemployment benefits (the "Disqualification Notice"), Mr. Camacho's failure to appeal the Disqualification Notice, the determinations by the Claims Deputy establishing the overpayment amounts (the "Overpayment Determinations"), Mr. Camacho's appeal of the Overpayment Determinations, the transcript of the hearing before the Referee relating to the Overpayment Determinations, and the Referee's decisions upholding the Overpayment Determinations ("Overpayment Decisions").[1]

On appeal, Mr. Camacho raises arguments related to the merits of the underlying Disqualification Notice. In addition, Mr. Camacho contends that an unrelated benefits notice contradicts the Board's decision. For the reasons set forth below, the Board's decision is **AFFIRMED.**

---

[1] Record ("R. at _.") at 5-6.

## II.     FACTUAL AND PROCEDURAL HISTORY

On September 22, 2019, Mr. Camacho filed for traditional unemployment insurance benefits and was granted the benefits in the amount of $291.00 per week.[2] Mr. Camacho was later granted Pandemic Emergency Unemployment Compensation ("PEUC") benefits in the same weekly amount.[3] Mr. Camacho also received supplemental federal pandemic related benefits, which included, Federal Pandemic Unemployment Compensation[4] ("FPUC") and Lost Wages Assistance[5] ("LWA"). At the time of distribution, claimants deemed eligible to receive traditional unemployment benefits were also deemed eligible to receive benefits under LWA and FPUC.[6] If a claimant was no longer eligible to receive traditional unemployment insurance benefits, then they were ineligible to receive benefits under LWA and FPUC.[7]

On December 30, 2020, the Claims Deputy issued the Disqualification Notice which disqualified Mr. Camacho from receiving benefits effective the week ending April 4, 2020 because he voluntarily quit his job with Synerfac, Inc. and failed to establish good cause for leaving his employment.[8] On that same day, a copy of the

---

[2] R. at 86, 91-92.
[3] R. at 5, 149 and 156.
[4] R. at 105 and 113-114.
[5] R. at 128 and 136.
[6] R. at 108, 116, 131, and 138.
[7] *Id*.
[8] R. at 90, 111, 134, and 154.

3

Disqualification Notice was mailed to Mr. Camacho's address.[9]  Because Mr. Camacho did not appeal the Disqualification Notice, it became final on January 9, 2021.[10]  On January 9, 2023, as a result of the Disqualification Notice, the Claims Deputy issued four Overpayment Determinations establishing Mr. Camacho's overpayment amounts.[11]  The overpayment totaled: (i) $5,238.00 for traditional unemployment benefits for weeks ending April 4, 2020 to August 29, 2020;[12] (ii) $1,455.00 for PEUC benefits for weeks ending September 5, 2020 to October 3, 2020;[13] (iii) $1,800.00 for LWA benefits for weeks ending in August 1, 2020 to September 5, 2020;[14] and (iv) $7,800.00 for FPUC for weeks ending April 4, 2020 to July 25, 2020.[15]  The Overpayment Determinations were mailed to Mr.

---

[9] R. at 112, 135, and 155.

[10] R. at 5, 86, 90, 105, 111, 128, 134, 149, and 154.  The Disqualification Notice notes that "[a]n overpayment will be established based on this decision" and that "this determination becomes final on 1/9/21 unless a written appeal is filed."  R. at 90, 111, 134, and 154.  "As January 9, 2021 was a Saturday, a written appeal postmarked or received on or before Monday, January 11, 2021 would have been considered as being timely filed."  R. at 86, 105, 128, and 149.

[11] R. at 89, 108-109, 131-132, and 152.

[12] R. at 89.

[13] R. at 152.

[14] R. at 131.

[15] R. at 108.  The Referee acknowledged the overlap of the overpayment weeks was due to Mr. Camacho receiving benefits from multiple funds.  *Id*. at 19:13-23.

Camacho's address on January 9, 2023.[16] Mr. Camacho timely appealed the Overpayment Determinations.[17]

On January 26, 2023, the Referee held a telephonic hearing addressing the Overpayment Determinations.[18] During the hearing, the Division representative submitted exhibits supporting the Overpayment Determinations.[19] Mr. Camacho disputed the underlying Disqualification Notice based on an unrelated benefits notice ("Case No. 11180558"), and submitted one exhibit describing his previous motor vehicle accident as well as a "Claimant Fact – Finding" document.[20] On February 1, 2023, the Referee mailed copies of the Overpayment Decisions, affirming the Overpayment Determinations to Mr. Camacho's residence which he then appealed to the Board.[21] On July 14, 2023, the Board issued and mailed a

---

[16] R. at 110, 133, and 153. The record does not contain a certificate of mailing for the Overpayment Determination in Case No. 61200915. Receipt of this Overpayment Determination is not disptued becuase Mr. Camacho timely appealed this decision. *See* fn. 17.

[17] R. at 173-196.

[18] R. at 23-69, and 171. At the hearing, Mr. Camacho confirmed his mailing address. *Id*. at 9:4-7.

[19] R. 89-98, 108-121, 131-142, and 152-162.

[20] R. at 99-103, 122-126, 143-147, and 163-167.

[21] R. at 13-22, 85-88, 104-107, 127-130, and 148-151.

consolidated decision affirming the Overpayment Decisions.[22]  Mr. Camacho timely appealed the Board's decision on July 21, 2023.[23]

## III.   PARTIES' CONTENTIONS

On appeal, Mr. Camacho disputes the Board's findings of facts.[24]  Mr. Camacho contends that he did not voluntarily quit his position and the employer that is listed is incorrect.[25]  In support of his position, Mr. Camacho relies on Case No. 11180558 which found him entitled to receive unemployment benefits.[26] Additionally, Mr. Camacho emphasizes that the Board intentionally omitted the findings in Case No. 11180558.[27]  In response, the Division argues the Board's decision was supported by substantial evidence, free from legal error, and was not an abuse of discretion.[28]  The Division further contends Mr. Camacho's objections related to Case No. 11180558 and the Disqualification Notice should not be considered on appeal.[29]

---

[22] R. at 5-12.  The Court notes that the Board's decision sets forth two dates for its review hearing: January 27, 2023, and February 22, 2023.  R. at 5-6.  As the date of the appeal is February 8, 2023, it seems the date of January 27, 2023 is a typographical error.  There is no dispute concerning the Board's review hearing date.
[23] R. at 4.
[24] Op. Br. at 1.
[25] *Id*. at 2-4.
[26] *Id*.
[27] *Id*.
[28] Ans. Br. at 9.
[29] *Id*. at 15.

## IV. STANDARD OF REVIEW

The Court's review of decisions from the Unemployment Insurance Appeal Board is limited. Pursuant to 19 *Del. C.* § 3323, "the findings of the Unemployment Insurance Appeal Board as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the Court shall be confined to questions of law." Therefore, the scope of review is limited to a determination of whether there was substantial evidence to support the findings of the Board.[30] Substantial evidence is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion.[31] Moreover, the Court may only consider the record before it.[32] If the Board's decision is supported by substantial evidence and is free from legal error, then the Board's decision will be affirmed.[33]

---

[30] *Starcks v. Unemployment Ins. Appeal Bd.*, 2013 WL 4848101, at *3 (Del. Super. July 30, 2013).
[31] *Id*. (citing *Oceanport Indus. v. Wilmington Stevedores*, 636 A.2d 892, 899 (Del.1994)).
[32] *Id*. (citing *Hubbard v. Unemployment Ins. Appeal Bd.*, 352 A.2d 761, 763 (Del.1976)).
[33] *Id.*

7

## V. ANALYSIS

### A. The Court Cannot Consider Arguments Relating to the Disqualification Determination

Appellate jurisdiction cannot be invoked, unless an appeal is submitted within the time frame required by law.[34] The record demonstrates that in the Disqualification Notice, the Claims Deputy advised Mr. Camacho that he was disqualified from receiving unemployment benefits because he voluntarily quit his position without demonstrating good cause. A Claims Deputy's determination, such as the Disqualification Notice, becomes final unless within 10 days of notification or mailing of that determination an appeal is initiated.[35] Since Mr. Camacho never appealed the Disqualification Notice, it is a final and non-appealable decision.

Mr. Camacho received adequate notice of the Disqualification Notice and the right to appeal it. Therefore, he cannot appeal the basis, or merits, of the disqualification through a subsequent appeal of the Overpayment Determinations.[36] Accordingly, the Court will not consider Mr. Camacho's arguments related to the Disqualification Notice, including the benefits determination in Case No. 11180558.

---

[34] *Id.* (citing *Duncan v. Delaware Dep't of Labor*, 2002 WL 31160324 at *1 (Del. Super. Sept. 10, 2002)).
[35] 19 *Del C.* § 3318(b).
[36] *Starcks*, 2013 WL 4848101, at *4.

**B.** **The Board's Decision is Supported By Substantial Evidence and is Free From Legal Error**

The law governing the recoupment of overpaid benefits is well established. Under Section 3325, "[a]ny person who has received benefits … to which it is finally determined that the person was not entitled shall be liable to repay in cash [the] overpayment … regardless of whether such sum was received through fraud or mistake, or whether he was legally awarded the payments of benefits at the time but on appeal was subsequently found not to be entitled thereto."[37] Moreover, "[u]nless the person files … within 10 days after such order was mailed to the person at their last known address, the order shall be final and recoupment shall be made in accordance with the order."[38] Once the disqualification decision is final, then the only matter before the Court is whether any benefits were received during the disqualification period.

Here, as previously mentioned, Mr. Camacho was deemed disqualified from receiving unemployment benefits. The Disqualification Notice became final when Mr. Camacho failed to appeal that decision. Subsequently, the Claims Deputy issued four Overpayment Determinations finding that Mr. Camacho received: (i) overpayment in the amount of $5,238.00 for traditional unemployment benefits for weeks ending April 4, 2020 to August 29, 2020; (ii) overpayment in the amount of

---

[37] 19 *Del. C.* § 3325.
[38] *Id*.

$1,455.00 for PEUC benefits for weeks ending September 5, 2020 to October 3, 2020; (iii) overpayment in the amount $1,800.00 for LWA benefits for weeks ending August 1, 2020 to September 5, 2020; and (iv) overpayment in the amount of $7,800.00 for FPUC for weeks ending April 4, 2020 to July 15, 2020.[39] The only issue on appeal is whether the amount of overpayment is accurate.

The Board's decision is supported by substantial evidence in the record and free from legal error. The Board, among other things, considered evidence that: (i) Mr. Camacho had been disqualified from receiving benefits; and (ii) the payment history showing that Mr. Camacho was paid benefits, of which he was not entitled. The payment history shows that Mr. Camacho received $291.00 per week for traditional unemployment benefits for eighteen weeks, then PEUC benefits in the same weekly amount for five weeks.[40] On top of those benefits, the payment history shows Mr. Camacho also received FPUC supplemental benefits for thirteen weeks and LWA supplemental benefits for six weeks.[41] Therefore, the overpayment amount is accurate. The Board correctly affirmed the Referee's Overpayment Decisions to uphold the Claims Deputy's Overpayment Determinations that Mr. Camacho is liable for the overpayment benefits in the aforementioned amounts.

---

[39] R. at 89, 108, 131, and 152.
[40] R. at 86, 152, and 156.
[41] R. at 108 and 131.

## VI.   CONCLUSION

The Board's findings that Mr. Camacho received overpayment of unemployment benefits is supported by substantial evidence and free from legal error.  Therefore, the Board's decision is **AFFIRMED**.


**IT IS SO ORDERED.**


*/s/Patricia A. Winston*
**Patricia A. Winston, Judge**